More difficult issues for you in that it seems that there's quite a lot of evidence that he intended to conspire to defraud the United States in terms of the testimony between the wife, the sister, that it was for money, and all of those things. Assuming that I would find your arguments persuasive on counts two and three, how do you get around count one? Thank you. Count one, as we pointed out in the brief, are they arguing that it was a conspiracy to defraud the United States or was it a conspiracy to commit one of the offenses named in the indictment? The instruction to the jury was the latter. Under the offense clause, the indictment provided for a cause of action that defrauding the United States. It doesn't seem to be rocket science here in the sense that he wants, you know, it's his second wife. He wants to stay here. He's about to, you know, he's lost his ability to stay here. And so he makes an arrangement with someone that, you know, I'll pay you, I'll get you a car, I'll do this, that, and the other so that, you know, marry me and then, you know, I can stay here. And that's, you know, and the United States has an interest in having only the people that meet the legal requirements to be here. Okay. Here. Here in the Commonwealth of the Northern Mariana Islands, controlled exclusively by CNMI immigration laws. Under the covenant, that area is reserved for the Commonwealth and the United States immigration laws don't apply until there was a modification of that law, which now has been postponed in its application until, I believe, November of this year. Originally, in June 1st, 2009, United States immigration laws would become applicable to the Commonwealth. If any of this case happened after the institution of United States federal immigration laws, then that argument that you're making would follow. But because it's reserved at the time of the offense for the Commonwealth, then only the Commonwealth laws can apply. So that's the legal basis. It's just so that if that had come into effect, then he could have been convicted on two and three. But that's, the conspiracy is still tripping me up. Let's look at, one, the indictment, and two, the testimony, you know, a little more carefully. The indictment explains the scheme and the overt acts that were alleged to create this conspiracy. And we move to dismiss because we don't believe that, on its face, this was sufficient. On the face of the indictment. Well, if you had succeeded in what he was trying to do, what would have happened? His wife submitted an application for her counsel. I know what happened. I don't want to hear about historical facts. Let's say he hadn't gotten caught and he had succeeded in doing what he had set out to do. What would be his situation then? I would understand that his wife would have received a United States passport. He would have applied for his immediate relative status in the CNMI, which is not contingent on her passport. He was eligible for that from the beginning. It's the government's case that... So he was eligible? For immediate relative status under CNMI law once he was married to Rose. So the obtaining of the passport was irrelevant? To his immigration status in the Commonwealth, yes. Well, he wanted her to go back to see his family or something. Right. That was the testimony that came from the agent and not the testimony that came from Rose or anyone else. And on cross-examination, when the agent was questioned, he came forward and said that no, he was... that the intent, according to Rose, was to obtain CNMI immigration status. And you could also infer that from his previous marriage where he had been married for five years to a U.S. citizen. There was no evidence that he submitted an application for a green card at that time. And he was intent to stay in the Commonwealth was how the evidence was presented. Rose said a few things that were telling about whether there was an intent to support a conspiracy. She said at the trial that she was married that day, the day of trial. She said that she'd been married every day to Mr. Amin from the time they were married in May until the time of the trial. She said, I don't know why he wanted a U.S. passport. She didn't know why he wanted a U.S. passport. And she said that the first time that she had learned that this was... But the application did contain false information, didn't it? That's at the heart of it. Were they married? Were they not married? And it's... Have she claimed to be married to him? It's government's Exhibit 1 is the application for the U.S. passport. And the question is, have you ever been married? And she marked X. And I'd like to note for the court that there's some conflicting testimony. But it was resolved that the suggestion was that Mr. Amin had filled in this form. And that she had just signed it. But she testified that defendant's Exhibit C was the original application that she filled out. And then, which is also marked yes, that she's married, and then... We're not here... We don't have a jury. We have to sort of take the evidence in the Lankos Fable into the verdict, right? Right. So we have to assume he filled it out, she signed it. I mean, we can argue about that. Isn't there evidence that would support that? Is there or is there not? If there is, we have to go with that. Right. For the sake of this argument, given the limited time, I think I have to say it's okay. But were they married in the Commonwealth? The application in the Commonwealth won't blush. And the stipulated facts, you have to conclude that they were married. It's only through the application of the Lutwit case, which is an immigration-based case based on the War Brides Act. And I'd also like to... Counsel, I'd like to return to your argument for just a minute on that. Are you suggesting then that the Count 1 was based on a violation of 18 U.S.C. Section 371? Is that correct? Yes. Are you suggesting that Section 371 does not apply to the Commonwealth of Northern Marianas? No. You're not suggesting that? I'm not suggesting that. Okay. So that one, he can be charged, your client can be charged under that? Yes. He can be charged under all three statutes. Okay. Well, then what does the fact of the immigration status of the CNMI have to do with this? If it doesn't go to sort of the jurisdiction, if all of those laws are applicable to persons living in the CNMI, then what are we to make of your argument? How do you determine what is a valid marriage? Okay, but that goes straight to Lutwak. That's not a question of jurisdiction or the application of immigration laws. That's a question as to what we do with the Lutwak case. Right. And it was the instruction that came from the Lutwak case that allowed this case to go beyond just CNMI law. And in the Lutwak case, nobody was arguing about the validity of the marriages in Europe. Is that correct? That's right. That was not contested. The question was whether they were fraudulent marriages in fact. That is, not by law, but by operation of fact, because they had been consummated in order to get people into the United States, and they were done for money. I think by law, because the interpretation was alien spouses, alien spouses under the War Brides Act, that was what Lutwak was interpreting. What is an alien spouse? Well, we think it's more than just having a formal marriage ceremony in Italy. Is that where it was? So we think you need more than that. But it was still interpreting a United States immigration statute for aliens, as was the cases that follow that, SOCO, also cited by the government. They're all citing U.S. immigration cases. And to provide guidance on the breadth to which the covenant exempts United States immigration laws, I refer the Court, and it's not cited in the brief, to 8 U.S.C. 1101A17, which defines what immigration law the United States will now apply to the Commonwealth. It's very broad in scope. The term immigration laws includes the Act, the Naturalization Act, Immigration Act. It doesn't include 371. I beg your pardon, Your Honor? It does not include 371. It does not include 371. It doesn't include the Conspiracy Statute, Section 2. Right. It doesn't include that. It does not. And so then you just have to look to, one, there has to be some kind of deceit or defrauding going on. And if it's not deceitful and defrauding to say you're married when you're married, then you lose an element of the conspiracy. Number one. Number two. But the LUBAC did involve Section 371. It did. It did, but it relied on an interpretation of United States immigration laws. It seems to me the relevant thing about LUBAC is what Judge Briby suggests, and that is that it didn't matter whether this was a valid marriage in Italy or not. I mean, nobody asked that question and nobody cared. And for all we know, the parties there would have been perfectly valid marriage for Italian purposes. Right. But nobody cared. I mean, not careful person of the case. What matters to the person of the case is whether for federal law purposes, whether for purposes of C-71, this was what we call a real marriage. That is correct, Your Honor. Why is that exactly what happened here? The jury looked at it and found not a real marriage. Because the Commonwealth has its own marriage fraud statute. And under Section 103 of the Covenant, marriage is left to the Commonwealth. Number one, if I may, Your Honor, number two is that going back to the Ludwig case, the interpretation of a valid marriage is not in the context of 371. It's in the context of the War of Brides Act and what is an alien spouse. That's the analysis which has been applied. Well, because you violate this immigration status, you're not an alien spouse, you say you are, then it's a conspiracy to defraud the United States. But isn't the question of the validity of the marriage under CNMI law irrelevant? And doesn't that mean, then, that these folks may still be married, for all we know, under CNMI law? You know, the intestate succession rules apply and so forth. But Ludwig doesn't seem to affect that in any way. That would be true in Hawaii and any other state. But given the Covenant and looking at the specific definitions in the analysis to the War of Brides Act, you can also follow that up with the Sacco case. These are all interpreting immigration statutes. And with the breadth of the immigration that was reserved, which is clearly demonstrated in 8 U.S.C. 1101A17, it's just this is an area that has been reserved for the Commonwealth. Okay, thank you. Thank you. Chief Judge Kaczynski, Circuit Judges Bybee and Galhan, my name is Kurt Shuler. I represent the government in this case. May it please the Court. Your Honors, marriage is just not that easy. Mr. Amin, through Mr. Thompson, wants you to believe that because Mr. Amin went through a ceremony, he was married and as a result he didn't make a false statement when he said he was married on Rose's passport application. Well, Your Honors, that was a false statement. Well, if I understand his argument, and correct me if you understand it differently, but I understand his argument is that the analysis that would require or permit the jury to find, or the instruction that permitted the jury to find an absence of a valid marriage is an immigration, it comes from the immigration context, and because of the immigration exclusion that applies to CNMI, or applied to CNMI at the time, that analysis can't be given to the jury. It's not a valid instruction.  I don't think he is arguing that necessarily under CNMI law it would be validly married. Your Honor, let me make a point. I'm not sure exactly what the question asks, but I think I want to make the point that under CNMI law or federal law, this was not a valid marriage. Mr. Powell, can't you have a valid marriage that's either void or voidable? Yes, Your Honor. I think certain states, certainly some of the case law that we cited in our briefs. Well, is there any question here that amends marriage to Rose Mayo Amora Reyes? Is there any question that it didn't occur according to the provisions of marriage set in the Northern Mariana Asylums? There's no question that a ceremony was performed. Well, didn't they do everything that that law requires? Your Honor, the CNMI law also has a requirement that the jury was instructed on about marriage fraud. That instruction in that CNMI law is no different than the case law in Litwack. Okay, but does that mean that the marriage wasn't valid when it was performed? Absolutely, Your Honor. This marriage was not valid because federal case law... So then are you saying it's void or voidable? I'm saying that it's void, and that's the way that the jury was instructed. Well, and part of the issue is they're saying the jury wasn't correctly instructed. Correct, Your Honor. But under federal case law, the United States Supreme Court has acknowledged that a common understanding of marriage requires an intent to establish a life together. This court in United States v. SACO said that that intent to establish a life together is an additional federal requirement. Therefore, to have a valid marriage, you have to have an intent to establish a life together. In this case, the intent to establish a life together was wholly absent. So I want to make sure I understand you correctly. So are you arguing that the marriage for CNMI purposes, they can treat this marriage as valid or not valid as they wish? There's no collateral effect here. Is that right? CNMI can treat this marriage as valid irrespective of anything we decide today. Yes, Your Honor. Okay. So the only question then is whether for purposes of federal law, we have to recognize a marriage that may be valid under CNMI law. Correct, Your Honor. And federal law has recognized that there must be an intent to establish a life together. Here, the parties didn't date. There was no courtship. There was no even socializing among the parties. The defendant met Rose at a barbecue where he approached her and said, let's make a deal. He said, I'll help you if you help me. He offered her money. In return, he would get his immediate relative immigration status. The testimony, the evidence at trial said the marriage was fake. They didn't love each other. They never intended to establish a life together. Rose told the jury, when I said my vows, I was lying, and this marriage was a fake. Now, I think the most important facts in this case are disclosed on pages 8 and 26 of the government's supplemental excerpt of record. On page 8, the case agent testifies that the defendant knew that he had to show the case agents that he lived with Rose. The case agents came to Saipan. They were investigating passport fraud. When the case agents came to Saipan, they contacted the defendant. On page 8 of the excerpt of record, the case agent testifies that the defendant knew that he lived with Rose. I have a page. This is a supplemental excerpt? The supplemental excerpt of record, yes, sir. Is this page 37 of the transcript? I believe that's correct, Your Honor. I see there's a Thompson talking. I see the court talking. What's the witness's name? Mr. Salas. Not on this page. It should be page 8 of the government's. Do you have the excerpt of record? I do, Your Honor. Why don't you find it? No. Is the real numbers at the bottom of the safe? Yes, Your Honor. It's page 8, 008, 37 in the transcripts. What line? Sixth, seventh, eighth lines. Okay. And here the case agent is testifying that Mr. Amin, the defendant, made it appear to him or tried to convince the case agent that he lived at this house with Rose. Now, if you turn to page 26 of the supplemental excerpt of record, this is Rose's sister. She's testifying here that the defendant came to her house and said? What line? Well, it goes through line 3 to line 20, but if you just focus on 18, 19, and 20, the prosecutor said, I just want to be clear. So the defendant told you to tell the case agent from immigration that he was staying, that the defendant was staying with your sister Rose? Yes. Okay. This makes clear that the defendant wanted immigration to believe that he was living with Rose. In other words, the defendant, in other words, his understanding of what a marriage means is identical to what the Supreme Court said in Lutwick, that you have to have an intent to establish a life together. The defendant's understanding was identical. And therefore, even the defendant's understanding of what a marriage was, when he filled out that passport application, he knew he was making a false statement. Well, she filled out the passport. I mean, it was essentially? Your Honor, the testimony at trial, I believe, was unrebutted that Rose had filled out the initial form. And subsequently, the form that was actually filed with the passport agency was actually filled out by the defendant. And when Rose filled it out, it wasn't completed. She had the defendant help her, and the defendant requested her to fill that out. So the form that was actually filed with the passport agency was undisputably filled out and filed by Mr. Amin. Okay. Thank you. Thank you, Your Honor. All right. You've taken more than your time. If you'd like a minute for rebuttal, we can hear you. I would appreciate that, Your Honor. Thank you. I'm not sure I'm speaking to a person. Well, thank you. Thank you, Your Honor. I will only use a minute. The CNMI marriage fraud law does not void the marriage or invalidate the marriage on its terms. That's why we argued that jury instruction number 22 was wrong as a matter of law and wouldn't you suggest in its stead that you offer alternative language? Yes, I did, and it was accepted, and that is the law of the land, that for a valid marriage you need to comply with certain prerequisites, filling out the application and so forth and going through a proper ceremony. That was what establishes a valid marriage, and that should have been the only instruction. To graft on the marriage fraud one is it even if you had a fraudulent marriage. It's your position that the correct instruction would have told the jury if they went through a ceremony and met all the legal requirements, that's a valid marriage. It doesn't matter if you paid for it. It doesn't matter if they ever lived together. It doesn't matter if they ever established any kind of life together, whether they ever saw each other again. That's your view as a juror. Correct, because that's the state of the CNMI law. But would you concede, though, that even that being the case, that still you could be guilty of conspiracy to fraud. You could have a valid marriage, and there still could be facts that would make you guilty of conspiracy. Would you concede that? The proof be and that those facts were not. Well, you're not conceding it under this case, but you would concede. But what you're saying is the valid marriage would negate two and three, but not necessarily one. Not necessarily, but if the conspiracy to defraud, then that also requires a fraud or deceit. Right, and I understand that. And also the intent issue, which, you know, is in the record. And what was your authority for the proposition that that would have been valid marriage in the CNMI law? One, the statute itself, and two. This is 4366. 3 CMC 4366. No, Your Honor. Valid marriage is on page, I laid it out on page eight of our brief. It's 8 CMC 1201 and 8 CMC 1202. But doesn't 4366 talk about fraudulent marriage? It does. And doesn't that say that if you enter into a marriage for the sole purpose of obtaining immigration benefit or making use of the Commonwealth's immigration law, that's a marriage fraud? That is criminal marriage and punishable as a crime, but no one saw this. So how is your instruction valid if it excludes this? It doesn't include this limitation. You're saying, okay, we're going on the law of CNMI, but the law of CNMI clearly says it's not a valid marriage if you do it for these purposes. It says it's a fraudulent marriage, it's a criminal marriage, but it doesn't void the marriage or invalidate the marriage by its terms. So it almost predisposes a marriage. You can't have a fraudulent marriage unless you have a marriage. If you never had a marriage at all, I guess you couldn't have a fraudulent marriage. And there's nothing in that statute like, nothing at all like instruction number two. If you find that this marriage is fraudulent, then you may presume that it was like never having a marriage at all. That's just not the law. That's something I believe from the restatement, but nothing in our CNMI criminal code. And the last point is on this additional federal requirement, and that's the big hook. It is definitely mentioned in Ludwig and the nine certain cases after, but they rely on immigration laws. Thank you.
judges: Kozinski, Bybee, Callahan